IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARIAH C.[1]**, <br><br> Plaintiff, <br><br> v. <br><br> **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 6:22-cv-614-SI <br><br> **OPINION AND ORDER** |

Nancy J. Meserow, 7540 SW 51st Ave. Portland, OR 97219. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Scott Elliott, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Mariah C. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

insurance benefits (DIB). For the following reasons, the Court reverses the Commissioner's decision and remands this case for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB on May 29, 2018, alleging a disability onset date of October 11, 2017. AR 70-71. Plaintiff's date of birth is March 15, 1982, and she was 35 years old as of the

alleged disability onset date. AR 70. She alleges that she is now unable to work due to fibromyalgia, chronic headaches, anxiety, irritable bowel syndrome, nausea, vomiting, muscle spasms, weakness and chronic fatigue, insomnia, depression, difficulty focusing and concentrating, and pain in her jaw, neck, and shoulders. AR 71.

The agency denied Plaintiff's claims both initially and upon reconsideration, and Plaintiff requested a hearing. AR 86, 106, 122-23. Plaintiff appeared before an Administrative Law Judge (ALJ) for a hearing on March 2, 2021. AR 30. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 13-23. Plaintiff appealed the decision to the Appeals Council, which denied review, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff now seeks judicial review of that decision.

**B.   The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

PAGE 4 – OPINION AND ORDER

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

As a preliminary step to Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status through December 31, 2022. AR 15. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 11, 2017. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: multilevel degenerative disc disease, small fiber neuropathy, and tension headaches. AR 16. At step three, the ALJ determined that none of the impairments, either individually or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform light work as defined in 20 C.F.R 404.1567(b), with the following limitations:

> [Plaintiff] can frequently climb ramps and stairs, but never ropes, ladders, and scaffolds; she can occasionally stoop, crouch, crawl,

>and kneel. [Plaintiff] should have no exposure to workplace
>hazards. [Plaintiff] should be able to change position between
>sitting and standing in 30 to 60 minute intervals.

AR 17.

At step four, the ALJ determined that Plaintiff was not capable of performing her past relevant work as a veterinary technician. AR 22. At step five, relying on testimony of a vocational expert, and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 23. These jobs included: Buckle Inspector (60,000 jobs in the national economy), Inspector Packer (92,000 jobs in the national economy), and Electronics Worker (52,000 jobs in the national economy). *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled from the alleged onset date through April 15, 2021, the date of the ALJ's decision. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred: (1) at step two, in concluding that Plaintiff's alleged fibromyalgia, depression, and myalgic encephalomyelitis/chronic fatigue syndrome (ME/CFS) are not medically determinable impairments; (2) by failing to properly apply SSR 19-4p to evaluate whether Plaintiff's tension headaches equate to a listing at step three; (3) by improperly evaluating the medical opinions; (4) by improperly rejecting Plaintiff's subjective symptom testimony; and (5) by improperly evaluating the lay witness testimony of Plaintiff's son and employer. The Commissioner expressly concedes that the ALJ erred at step two in analyzing Plaintiff's fibromyalgia and CFS. The Commissioner generally asserts that Plaintiff's remaining arguments involve symptoms that could be attributed to Plaintiff's fibromyalgia and CFS and thus those issues must be remanded for further consideration.

This statement by the Commissioner's appears to be an implicit concession that the ALJ erred in evaluating Plaintiff's symptom testimony, the lay witness testimony, the medical

testimony, Plaintiff's depression at step two, and Plaintiff's headaches at step three. To the extent the Commissioner does not intend to concede these errors, the Commissioner offers no argument, evidence, or legal authority in opposition to Plaintiff's arguments. The Commissioner's failure to defend the ALJ's reasoning or respond to Plaintiff's arguments challenging these reasons is a waiver of any argument that the ALJ did not err in these analyses. *Jeffrey C. v. Kijakazi*, 2023 WL 4760603, at *3 (D. Or. July 26, 2023) ("The Government's failure to defend Plaintiff's allegations of error, however, is a concession of those alleged errors."); *see also Megan S. v. Berryhill*, 2019 WL 1919169, at *5 (D. Or. Apr. 30, 2019) (finding that the Commissioner "has waived any argument that the ALJ provided a clear and convincing reason other than Plaintiff's purported improvement" by failing to respond to Plaintiff's arguments other than generally to assert "harmless error"); *Alesia v. Berryhill*, 2018 WL 3920534, at *7 (N.D. Ill. Aug. 16, 2018) (finding that the Commissioner's "conclusory assertion and overly broad evidentiary citation" is not a sufficient argument and thus waives any argument that the ALJ's conclusion was legally sufficient). The Court, therefore, considers whether these all of these errors require a remand for further proceedings or an award of benefits. The Court first discusses the evidence underlying each alleged error for context in evaluating whether conflicts or ambiguities exist in the record requiring further proceedings.

**A. Step Two Errors**

As conceded by the Commissioner, the ALJ found that fibromyalgia and ME/CFS were not medically determinable, and yet there are medical evaluations and diagnoses in the record to support them, including records otherwise relied on by the ALJ. Regarding Plaintiff's depression, the ALJ mischaracterized Plaintiff's depression when considering its effects at step four. The ALJ cited Plaintiff's hospitalization from September 7, 2019 to September 13, 2019,

where Plaintiff had suicidal ideation after the death of her partner and was diagnosed with major depressive disorder, adjustment disorder, posttraumatic stress disorder, and borderline personality disorder. AR 19, citing AR 992. The ALJ reasoned that this hospitalization was "in the context of acute trauma" and the "evidence does not support any mental limitations." AR 19. The record does not support these contentions because Plaintiff has been struggling with depression since her early twenties and not just in the context of acute trauma. *See* AR 447. Plaintiff also reported that her depression was causing her to "have a hard time focusing at work." *Id.* She was also advised that she should take half a day off from work every two to three weeks for counseling appointments. *Id.*

**B. Step Three Error**

Although a finding that Plaintiff meets a listing at step three requires remand for further proceedings, a finding that the ALJ erred at step three is not the same. An ALJ erring at step three does not necessarily mean that Plaintiff meets a listing or that the Court must award benefits—the Court must still engage in the credit-as-true analysis. *See Fawnette S. v. Comm'r of Soc. Sec.*, 2019 WL 3812501, at *8 (W.D. Wash. Aug. 14, 2019) (declining to remand for benefits despite step three error "because the evidence does not definitively establish that plaintiff's spinal impairments meet or medically equal the criteria of Listing 1.04(A)"); *cf. Benjamin O. v. Kijakazi*, 2022 WL 17539120, at *6 (D. Idaho Dec. 8, 2022) ("The Court declines to remand for an award of benefits on the basis of error at step three, however, because it is not clear that the Commissioner would be required to find Petitioner disabled solely due to lack of medical improvement at step three. For the Court to remand with instructions to calculate and award benefits, each of the three parts of the credit-as-true rule must be satisfied . . . ." (citations omitted)).

Plaintiff argues that the record contains evidence that her headaches meet or equal Listing 11.02. ALJs evaluate headache disorder claims under Listing 11.02, the listing for epilepsy. *See* SSR 19-4p, *available at* 2019 WL 4169635 (Aug. 26, 2019). To equal Listing 11.02B, a claimant must have headache events "at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." *Id.* at *7. To equal Listing 11.02D, a claimant must have headache events "at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning." *Id.* To determine whether a claimant's symptoms are "equal in severity and duration to the criteria in 11.02B," the ALJ must consider:

> A detailed description from an [acceptable medical source] AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.*

The record demonstrates that Plaintiff complained to providers about her severe headaches, despite various treatments. *See, e.g.*, AR 432 (5/21/18 chart note about stabbing headache at an undisclosed earlier time that "has threatened a few times since then but hasn't come back full force"), 542 (12/30/18 chart note stating Plaintiff had headaches starting in neck and moving up at a level of 7/10), 581 (1/2/19 chart note reporting Plaintiff's complaint of increased headaches due to her neck), 846 (10/5/20 chart note reporting Plaintiff's complaint that her headaches are "still bad"), 619 (11/19/20 ER chart note reporting Plaintiff's complaint of

PAGE 9 – OPINION AND ORDER

increased headaches after her fall), 656 (11/25/20 chart note reporting Plaintiff's complaint of "near constant" headaches), 620 (12/11/20 ER chart note mentioning Plaintiff's complaint of ongoing headaches as an aside to her primary complaint of a cat bite), 821-22 (12/31/20 chart note reporting Plaintiff's complaint of "constant headaches"). These and other records, however, do not conclusively show that Plaintiff's headaches meet the criteria of Listing 11.02.

**C. Medical Evidence**

    **1. Catherine Lee, QMPH**

Catherine Lee treated Plaintiff at Cascadia Behavioral Health. AR 713. Lee opined that Plaintiff's major depressive disorder resulted in symptoms which, when combined with her fibromyalgia symptoms make it "difficult for her to engage regularly in activities." AR 612.

    **2. Alena Guggenheim, N.D.**

Alena Guggenheim is a pain specialist at OHSU, and she diagnosed Plaintiff with fibromyalgia, small fiber neuropathy, and chronic fatigue syndrome. AR 991, 907, 561-66, 1649. She opined that Plaintiff is limited in "dependability in any work environment" and she is "unable to work consistently in a dependable manner." AR 1650. She also indicated that Plaintiff would likely miss more than two days a month as a result of her combined impairments resulting in headaches and "widespread body pain." *Id.*

Guggenheim's treatment records referenced multiple objective tests that allowed her to rule out other causes for Plaintiff's fibromyalgia, chronic fatigue syndrome, and small fiber neuropathy symptoms. AR 943, 980, 987, 992. Guggenheim's medical source statement also references a positive Beighton score, abnormal QSWEAT testing, and an abnormal nerve fiber skin biopsy in support of her opinions. AR 1649, 926-29, 910, 947.

### 3. Agency Physicians

Dr. William M. Backlund evaluated Plaintiff's medical records for the agency at the initial level. AR 70-87. Dr. William Nisbet evaluated Plaintiff's medical records for the agency upon reconsideration. AR 89-107. Drs. Backlund and Nisbet opined that Plaintiff's fibromyalgia and cervical degenerative disc disease resulted in the ability to perform "light" work full time. AR 86, 100. Mental health reviewer Clare McGinness, Psy. D. reviewed Plaintiff's record at the initial level and Susan M. South, Psy. D. reviewed Plaintiff's records upon reconsideration. These mental health reviewers concluded that Plaintiff has "slight impairment" with difficult concentration tasks that "no more than minimally affect work function." AR 72, 103. Agency mental health evaluator John Adler, Phd. performed a psychological evaluation of Plaintiff and concluded that Plaintiff had only a "slight impairment with more difficult concentration tasks." AR 536.

The ALJ found the opinions of all of these doctors persuasive because they were supported with an "explanation" and because they were consistent with the record or with the opinions of other agency doctors. As noted, Plaintiff challenged the ALJ's reasoning for accepting these agency doctors' opinions and the Court finds that the Commissioner has conceded these alleged errors. These opinions are no longer considered persuasive for purposes of the Court's credit-as-true analysis.

### D. Plaintiff's Testimony

In October 2017, Plaintiff was terminated from her full-time job as a veterinary technician. She had worked at the Oregon Humane Society for three years before she was unable to keep up with the pace of the work. AR 365. Plaintiff then began working as a veterinary technician at Overlook Veterinary Hospital. Plaintiff testified at the hearing that she drove to

Portland or rode as a passenger about once per week to work for half a day as a veterinary technician in her current job. AR 36. She stated that her current employer would hire Plaintiff full time if she wanted, but she is not physically able. AR 37. She is precluded from full time work because of her unpredictable pain, sudden migraines, exhaustion, muscle spasms, panic and anxiety attacks, and memory loss.

Plaintiff explained that repetitive tasks cause pain, remaining in one position for 10-15 minutes causes pain, she does not have stamina to perform tasks like she used to, and she gets waves of dizziness. AR 38. She also clarified that her migraines have increased after a fall in which she incurred a concussion. She now has headaches a few days per week that affect her ability to concentrate, focus, and remember. *Id.* She testified that even working only part time, she sometimes has to rest the following day and misses shifts or leaves early due to her limitations. AR 46-47.

Plaintiff described that she tries to exercise, but swimming increased her pain. AR 41-42. She mostly walks around the neighborhood, but "nothing strenuous." She also tries to do "stretching and some light yoga." AR 42. She also worked with a pain physical therapist to find some light exercise that would not exacerbate her symptoms. She uses a traction machine and microcurrent machine at work to try to ease her symptoms. She regularly changes her position.

Plaintiff explained that she can do simple cooking like soups and crockpot meals. Otherwise her son cooks. She stated that she uses an app to shop and the store personnel loads the groceries in her car. Her son then unloads the groceries and she only puts away light items. AR 42-43. For chores, she occasionally does dishes, performs light sweeping, and loads the laundry but does not unload it. For hobbies she sketches a little, walks, bird watches, and visits her parents once per week.

Plaintiff described that her medications would help some but not enough to alleviate her symptoms. AR 48-49. She listed many medications and other treatment options she has tried, different exercises, and explained that she will never stop trying to alleviate her pain. AR 50-52. Plaintiff also described the accommodations made by her current part time employer, including that Plaintiff can change into any position, lay on the floor if needed, and leave early. AR 53.

The record includes abnormal mental status examination findings and intermittent cognitive problems. AR 365, 535, 554, 1009-10, 1015-17, 1032. Plaintiff has been diagnosed with depressive disorder, adjustment disorder, posttraumatic stress disorder, and borderline personality disorder. She has also been hospitalized with suicidal ideation, with the records supporting "issues with attention/concentration" as well as abnormal thought process and mood dysregulation. AR 1009-10. Mood dysregulation and disorder are well documented. AR 395, 398, 401, 408, 411-18, 446-48, 471-77, 567, 638-642, 675, 1193, 1199, 1204, 1210.

### E.  Lay Witness Testimony

Plaintiff's employer, Rebecca Scott, DVM, submitted a written statement supporting Plaintiff's claim. AR 365. Dr. Scott stated that "lifting, reaching, bending, twisting, and restraint are consistently difficult or unmanageable" for Plaintiff. She also explained that Plaintiff is unable to "maintain any position for long without it causing her increased pain." She clarified that includes sitting or standing. Dr. Scott also confirmed that Plaintiff has to leave early for 50 percent of her shifts due to her symptoms and that despite Plaintiff's knowledge and experience, the pain causes her to "lose track of topics mid conversation or tasks while performing them." Dr. Scott confirmed that she would have Plaintiff work full time if Plaintiff could.

Plaintiff's son, Sage, also submitted a statement. AR 364. He described that before his father left four year earlier, his father did all the chores at home. After his father left, he and his

mother had to relocate most of their animals. He described that his mother used to be able to walk more with him and help more, but now she can do very little. He and a neighbor do most things around the house. His described a new symptom where his mother has sudden pain in her arms and has to sit down and drops what she is holding. He explained that they do not know when this symptom will occur, but and it now happens "a couple times" per week.

## F. Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the

district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful errors in rejecting Plaintiff's alleged fibromyalgia, ME/CFS, and depression at step two, by not offering specific, clear, and convincing reasons to reject Plaintiff's pain testimony, in evaluating the medical evidence, and in ignoring the lay witness testimony. The medical evidence, however, is contradictory, and the ALJ did not evaluate it with the proper understanding or framework that Plaintiff's fibromyalgia and ME/CFS are severe impairments. Plaintiff argues that because the Commissioner does not identify any specific contradictions or ambiguities the Court should credit as true the discounted evidence (the medical evidence, Plaintiff's testimony, and the lay witness testimony). The Commissioner generally argues that because all of the challenged evidence was improperly considered it thus needs to be reconsidered by the ALJ "in the first instance." Although that argument is unavailing, the Court agrees that there remain contradictions and ambiguities in the record, including between the agency medical opinions and Plaintiff's providers and other witnesses, and whether Plaintiff's headaches meet Listing 11.02.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS this case for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 8th day of September, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge